**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-60051
Summary Calendar

JILL M. DUBAZ,

Plaintiff-Appellant,

VERSUS

JOHNSON CONTROLS WORLD SERVICES, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Southern District of Mississippi
(1:96-CV-374-GR)

November 20, 1998

Before DAVIS, DUHÉ and PARKER, Circuit Judges.

PER CURIAM:[*]

Jill Dubaz ("Dubaz") appeals the grant of summary judgment for Johnson Controls World Services, Inc. ("Johnson Controls") on her Title VII sex discrimination in employment and retaliation claims. We affirm.

FACTS

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Viewing the summary judgment evidence in the light most favorable to Dubaz, we distilled the following facts from the record. Dubaz worked at Johnson Controls' predecessor company beginning in March 1985. She was employed as a Class 4130 welder and performed structural steel "stick" welding. She was the only female welder and the only Class 4130 welder employed by Johnson Controls. She was not certified for nor did she have the ability to perform the other types of welding required for a Class 4140 welder.

In January 1994, Dubaz participated in a lawsuit (the "Bush suit") by providing deposition testimony on behalf of a plaintiff in that case. She testified in her deposition that she had been sexually harassed by a shop leader in another Johnson Controls department. Some co-workers did not want to work or associate with Dubaz after her testimony. Dubaz characterizes their motive as retaliation, while they claim they were afraid she would falsely accuse them of sexual harassment.

In June 1995, Johnson Controls decided to discontinue funding for its Class 4130 welding position. At that time, Dubaz was the only individual employed as a 4130 welder and the only female welder employed by Johnson Controls. Dubaz was notified that she would have to become certified as a Class 4140 welder if she wanted to continue as a welder with Johnson Controls. Johnson Controls paid her fees to enroll in a training program and rearranged her work schedule so that she could continue to work and attend school. She did not feel that she was ready and therefore refused to take

2

the certification test by October 1, 1998, as required. Johnson Controls advised her that she could bid on a different job at Johnson Controls or that she could reapply for a welding position when she achieved proper certification. Dubaz declined to do either, and her employment was terminated.

SEX DISCRIMINATION

Dubaz has the burden of establishing a prima facie case of discrimination or retaliation. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-517 (1993). In a reduction of work force case, a prima facie case is established if: (1) plaintiff is a member of a protected group; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position at the time of the termination and (4) the employer intended to discriminate in reaching its decision. *See Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996). Dubaz did not present summary judgment evidence that she was qualified to assume another position with Johnson controls. It undisputed that she was unqualified to fill the Class 4140 welder position, and she refused to bid for other jobs as she was advised to do.

Dubaz argues on appeal that the district court erred in treating her case as a reduction in work force claim. She takes the position that the elimination of the Class 4130 welder position was a pretext for terminating her and her claim should be analyzed as a "straight discharge case." To prevail on this theory, Dubaz must establish a fact dispute on each element of a prima facie case of unlawful discharge: (1) she was a member of a protected group;

3

(2) she was qualified for, and adequately performed, her job; (3) she was terminated from that job; and (4) her employer had a continued need for someone to perform the same work after she was terminated. *See Hicks*, 509 U.S. at 508. Dubaz's appeal focuses on the fourth element, claiming that Johnson Controls continued to have a need for someone to do stick welding. Dubaz is correct that Johnson Controls did need employees to do the type of welding she was qualified to do. However, as the district court noted, there is no evidence that anyone, male or female, was employed doing solely stick welding work after Dubaz left Johnson Controls. Rather, the stick welding was divided among the other welders who were each required to other types of welding as well. Dubaz's arguments concerning what she perceived as potential cost savings engendered by continuing to fund the less skilled welder position does not create a genuine issue of fact regarding whether Johnson Controls had a continued need for workers who were capable of doing solely stick welding. Title VII does not allow a court to sit as a super-personnel department and micromanage a company's business decisions. *See Benningfield v. City of Houston*, ___ F.3d ___, 1998 WL 685661 (5th Cir. 1998).

For the foregoing reasons we affirm the summary judgment for Johnson Controls on Dubaz's discrimination claim.

RETALIATION

Dubaz's retaliation claim fails as well. A retaliation claim has three elements: (1) the employee engaged in protected activity under Title VII; (2) the employer took adverse employment action

4

against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997). Dubaz did engage in protected activity under Title VII when she offered deposition testimony in the *Bush* lawsuit and her termination clearly qualifies as adverse employment action.

Dubaz points to two incidents as evidence of retaliatory intent in the decision not to fund the Class 4130 welder position: (1) a letter of reprimand put in her file in February 1994 by a supervisor named McArthur; and (2) a statement by Freeman, the employee she testified sexually harassed her, that he was "going to get that bitch fired any way he could." Freeman had no supervisory authority over Dubaz; in fact he did not even work in her department. Further, neither McArthur nor Freeman were involved in the decision to stop funding the Class 4130 welder position. Horne made that decision after an independent investigation. Finally, Dubaz was laid off twenty months after she testified, during which time Johnson Controls paid for special training, accommodated her scheduling needs and encouraged her to bid on other jobs in an effort to avoid termination. This evidence does not create a genuine issue of material fact concerning retaliation. *See generally Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 590 (5th Cir. 1995)(finding no causal connection between protected activity fifteen months earlier and plaintiff's loss of employment).

We therefore affirm the district court's grant of summary

judgment for Johnson Controls on Dubaz's retaliation claim.

AFFIRMED.